UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES B. WILSON,                          CIVIL DIVISION

      Plaintiff,                       Case No.: 8:20-cv-00135-TPB-SP

v.                                        Judge: Thomas P. Barber

PINELLAS COUNTY,                          Mag. Judge: Sean P. Flynn
a political subdivision of the State
of Florida,

      Defendant.
_____/

## PINELLAS COUNTY'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW

**COMES NOW,** Defendant PINELLAS COUNTY, a political subdivision of the State of Florida (herein "the County"), by and through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56, moves this Court for an entry of summary judgment in its favor as to all claims asserted in Plaintiff's Complaint. Defendant submits this Motion, which states with particularity the grounds upon which it is based, the substantial matters of law to be argued, and specifically identifies the undisputed material facts upon which the County relies, which together establish that there are no material facts in dispute and the Defendant is entitled to judgment in its favor as a matter of law.

1

## I.      INTRODUCTION

Plaintiff, a former Park Supervisor of Fort DeSoto Park with the Parks and Conservation Resources department of Pinellas County, asserts a claim against Pinellas County for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. Specifically, Plaintiff alleges he was entitled to overtime pay for work he performed in excess of forty hours per work week and asserts that he did not meet an exemption under the Fair Labor Standards Act (herein "FLSA"). Plaintiff alleges that during the relevant time for this action, he regularly worked in excess of forty hours per week and also claims that he was "on call" twenty-four hours a day, seven days a week as he lived on-site in a County-owned residence at Fort DeSoto Park.

Plaintiff's unpaid overtime claim fails because the undisputed facts establish that Plaintiff's duties as Park Supervisor met all the qualifications of the executive exemption under 29 C.F.R. §541.100 (2019), thus making Plaintiff ineligible for overtime under the FLSA. Additionally, Plaintiff's claim for "stand-by" or "on-call" hours fails first because Plaintiff was a salaried employee exempt from the FLSA. Plaintiff's on-call claim also fails because Plaintiff cannot show that the time he alleges he was on-call was so restrictive that it could be considered predominantly for the employer's benefit, as Plaintiff was free to engage in his own personal

activities. Accordingly, Pinellas County is entitled to judgment in its favor in this action.

## II.    STATEMENT OF MATERIAL FACTS[1]

1.    Defendant PINELLAS COUNTY is a political subdivision of the State of Florida. *Undisputed.*

2.    Employees of Pinellas County are subject to the Pinellas County Unified Personnel Rules, Policies, Procedures and Guidelines (herein referred to as the "UPS Rules"). *Undisputed.*

3.     Pursuant to the UPS Rules, there are multiple designations for employees which impact how they are paid, including earning overtime. *Undisputed.*

4.    The UPS Rules have employee designations of "classified"; "classified-excluded"; and "exempt".  *Rule 3, UPS Rules, attached as Exhibit A and B to Kimberly Crum's Affidavit* [Doc. #26].

5.    A "classified" employee is an hourly employee who is entitled to overtime under the Fair Labor Standards Act (herein "FLSA") and enjoys the protections of the Unified Personnel System's Classified Service grievance procedures. *Undisputed.*

---

[1]In accord with this Court's Case Management and Scheduling Order [Doc. #16], a separate Statement of Undisputed Facts has been filed contemporaneously with this Motion. Facts that are undisputed between the parties have been notated in this section.

6.    "Exempt" employees and "classified-excluded" employees are both designations for employees whose positions are not eligible for overtime under the FLSA. *Rule 3, UPS Rules, attached as Exhibit A and B to Kimberly Crum's Affidavit* [Doc. #26].

7.    The key differences between an "exempt" employee and a "classified-excluded" employee under the UPS Rules are that "exempt" employees cannot earn overtime and do not enjoy the protections of the Classified Service, whereas "classified-excluded" employees enjoy the protections of the Classified Service and may earn overtime pursuant to Pinellas County policy if the employee works in excess of eighty hours in a two-week pay period and said overtime is pre-approved by the employee's supervisor. *"Overtime and Compensatory FAQs", attached as Exhibit D to Kimberly Crum's Affidavit; Rule 3, UPS Rules, attached as Exhibit A and B to Kimberly Crum's Affidavit* [Doc. #26].

8.    Plaintiff was employed by Pinellas County in various capacities from 1975 until July 31, 2019, when the Plaintiff retired. *Undisputed.*

9.    At all times relevant to this lawsuit, from approximately July 31, 2016, to July 31, 2019, Plaintiff was the Park Supervisor at Fort DeSoto Park in Pinellas County. *Undisputed.*

4

10.  Fort DeSoto Park is the largest park within the Pinellas County Park System, which is managed by the Parks and Conservation Resources department of Pinellas County. Fort DeSoto is 1,136 acres in size and is made up of five interconnected islands, which are home to beach plants, mangroves, wetlands, palm hammocks, native plants, over three hundred species of birds, and loggerhead sea turtle nesting during their nesting season. The park has, on average, over two million visitors annually. *Undisputed.*

11.  Fort DeSoto also has camping with 238 camping sites with electric access; restroom facilities; primitive camping sites; a seven-mile nature trail; two fishing piers; a dog park; a volunteer-ran onsite museum; and vendor-ran concessions and ferry operations. *Undisputed.*

12.  Plaintiff's responsibilities and duties at the Park included overseeing the entire enterprise of Fort DeSoto's operations. Plaintiff was the senior employee at Fort DeSoto park.  Plaintiff's supervisor was located at the Parks and Conservation Resources office in Largo, Pinellas County, Florida, on Ulmerton Road and rarely came to Fort DeSoto. *Plaintiff's Deposition at p. 21:18 – 24; p. 24:17 – 21; p. 28:24 –  29:11; p. 32:13 – 24; p. 33:14 – 18* [Doc. #25]; *Job Specification, attached as Exhibit C to Kimberly Crum's Affidavit* [Doc. #26].

13.   Plaintiff supervised all park rangers and administrative staff at Fort
      DeSoto, which, at its lowest, was twenty personnel in total. Plaintiff was
      also responsible for approving his direct reports' timecards and vacation
      requests; coordinating park ranger schedules; administering progressive
      discipline of employees of Fort DeSoto under the UPS rules; reviewing his
      employees on a quarterly basis, and providing vital information about the
      discipline, which included termination, of Fort DeSoto employees.
      Plaintiff's suggestions were given great weight by Plaintiff's supervisors
      as they had no regular direction interaction with the Fort DeSoto staff.
      *Plaintiff's Deposition at p. 21:18 – 21*; *p. 22:5 – 7, 22:11 – 17; p. 23:4 –*
      *6; p. 24:23 – 25:4; p. 25:5 – 20; p. 27:20 – 25; p. 73:20 – 25; 74:1 – 6*
      [Doc. #25];  *Job Specification, attached as Exhibit C to Kimberly Crum's*
      *Affidavit* [Doc. #26].

14.   Under the UPS Rules, Plaintiff was designated as an "exempt" employee
      from December 17, 2000, to September 16, 2017, and was therefore
      ineligible for overtime during that time. *OPUS Oracle data printout*
      *attached as Exhibit E to Kimberly Crum's Affidavit* [Doc. #26].

15.   In September of 2017 (specifically the week of September 11, 2017 –
      September 16, 2017), Plaintiff worked excess hours due to Hurricane Irma
      and its impact on the park. Plaintiff brought to his supervisors' attention

that he had worked excessive hours and was compensated pursuant to the UPS Rules and was paid for forty-two hours of "disaster pay". *Undisputed; see OPUS Oracle data printout, attached as Exhibit E to Kimberly Crum's Affidavit* [Doc. #26] *as to dates; see Rule 3, Compensation, attached as Exhibit B to Kimberly Crum's Affidavit* [Doc. #26] *in regards to Disaster Pay policies in effect during this time period.*

16. On September 17, 2017, Plaintiff's designation within the software utilized by Pinellas County Government for payroll purposes was changed from "exempt" to "classified-excluded" as the job specification of "Park Supervisor" was actually designated as a "classified-excluded" position. *Plaintiff's Deposition at p. 42:9 – 13* [Doc. #25]; *OPUS Oracle data printout, attached as Exhibit E to Kimberly Crum's Affidavit; Job Specification, attached as Exhibit C to Kimberly Crum's Affidavit* [Doc. #26].

17. At all times relevant to this lawsuit, the work performed in the role of Park Supervisor was determined qualify as exempt from the FLSA by Pinellas County as a "classified-excluded" position. *Job Specification, attached as Exhibit C to Kimberly Crum's Affidavit; "Overtime and Compensatory FAQs", attached as Exhibit D to Kimberly Crum's Affidavit* [Doc. #26].

18.   At all times relevant to this lawsuit, Plaintiff was designated as an employee who was exempt from overtime under the FLSA. *Job Specification, attached as Exhibit C to Kimberly Crum's Affidavit; "Overtime and Compensatory FAQs", attached as Exhibit D to Kimberly Crum's Affidavit; OPUS Oracle data printout, attached as Exhibit E to Kimberly Crum's Affidavit* [Doc. #26].

19.   Plaintiff also resided within the park in a County-owned residence, along with his wife, for approximately twenty years, departing upon his retirement. *Deposition of Plaintiff at p.20:21 – p. 21:1, also see Exhibit A (Lease) attached thereto* [Doc. #25].

20.   In exchange for the Plaintiff to be available for emergencies when park rangers were not scheduled to be working at the park, typically between 12 A.M. or 2 A.M and 6 A.M, Plaintiff was provided the County-owned residence free of charge for the entire duration of his occupancy. *Deposition of Plaintiff at p. 19:8 – 10; Exhibit A (Lease) attached thereto* [Doc. #25].

21.   Plaintiff alleges he was not an "exempt" employee and is entitled to earn overtime. *Undisputed.*

22.    Plaintiff alleges he is owed compensation for both overtime hours worked and "stand-by" or "on-call" hours to which he claims he was engaged twenty-four hours a day, seven days a week. *Undisputed.*

23.    Plaintiff was paid his income on a salary basis and was paid over $455 dollars per week during the relevant time to this action. *Payroll Registry, attached as Exhibit A to Donna Morahan's Affidavit* [Doc. #27].

24.    Plaintiff did, on occasion, work overtime hours pursuant to the UPS Rules and was compensated for such overtime, however this overtime was paid according to the Pinellas County Policy, and not pursuant to the FLSA. *Payroll Registry, attached as Exhibit A to Donna Morahan's Affidavit* [Doc. #27].

25.    Plaintiff claims his "on-call" or "standby" hours are compensable because he was expected to respond to emergencies since he resided within the park and always had his radio turned on to receive calls. *Undisputed.*

26.    Plaintiff created his own work schedule during the relevant time frame for this action. *Deposition of Plaintiff at p.27:20 – 25* [Doc. #25].

27.    Plaintiff was not required to refrain from alcohol or refrain from any particular activities when he was not working his scheduled hours. *Undisputed.*

28.    Plaintiff was able to leave the park for personal reasons, including vacations, and was not expected to be on-site for emergencies during those periods of time.  *Deposition of Plaintiff at p. 50:25 – 51:14* [Doc. #25].

29.    Plaintiff took ten weeks of leave for medical purposes in 2019 and was not expected to be available for emergencies during this leave. *Undisputed.*

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986), *cert. denied*, 484 U.S. 1066 (1988) (internal quotations omitted).

On summary judgment, the moving party has no burden other than pointing out that there is an absence of evidence to support the nonmoving party's case. *Id*. at 325. In order to survive a motion for summary judgment, a plaintiff must come forward with significant probative evidence to demonstrate that a triable issue of fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986). In the face of a properly supported motion for summary judgment, a plaintiff cannot rest on her allegations to get to a jury without any significant probative evidence to

support her complaint. *Id.* at 249; *see also First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 290 (1968). In order for the non-moving party to survive a motion for summary judgment, for "there must exist a conflict in substantial evidence to pose jury question." *Carter v. Florida Automotive Services LLC*, 2014 U.S. Dist. LEXIS 93918, at *3 (M.D. Fla. 2014); *citing Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247 (internal emphasis included).

## IV.   PLAINTIFF'S UNPAID OVERTIME CLAIM UNDER THE FAIR LABOR STANDARDS ACT, 29 U.S.C. §201

In order to prevail on his unpaid overtime claim in this case, Plaintiff must prove that he was suffered or permitted to work without compensation. 29 U.S.C. §201 *et seq.* "Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [defendant] knew or should have known of the overtime work." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1314 – 1315 (11th Cir. 2007). In the instant case, Plaintiff's claim fails because he was not entitled to overtime pay under the FLSA because the Plaintiff was employed in a bona fide executive capacity as the Park Supervisor pursuant to 29 U.S.C. §213(a)(1) (2019). Additionally, Plaintiff's claim for compensation of "on call" hours fails first because Plaintiff was exempt from the

FLSA, but also because the time Plaintiff claims he was on call was not restrictive and Plaintiff was free to engage in personal activities.

### a. Plaintiff's Work Qualified for the Executive Exemption from the FLSA

As a general rule, the FLSA provides that employees are entitled to receive overtime pay at one and one-half times their regular rate for all hours worked in excess of forty hours per week. 29 U.S.C. §207(a)(1) (2019). The FLSA exempts from its overtime pay requirements "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. §213(a)(1) (2019). In a dispute regarding overtime, the employer has the burden to show entitlement to an exemption in regard to the employee. *Jeffery v. Sarasota White Sox, Inc.*, 64 F. 3d 590, 594 (11th Cir. 1995). The Code of Federal Regulations defines 'bona fide executive employees' as those who (1) receive compensation on a salary basis of not less than $455 per week; (2) whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) who customarily and regularly directs the work of two or more other employees; and (4) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. §541.100(a) (2019).

Regarding the salary requirement of an executive, the irrefutable evidence of Plaintiff's payroll records proves that the Plaintiff was compensated far above the $455 per week required by federal law in 2019. Plaintiff was compensated biweekly at a rate ranging from $2,894.76 in late 2016 to $3,040.38 in mid-2019, with an annual salary ranging from $75,379.20 in late 2016 to $78,790.40 at the time of Plaintiff's retirement. *See Payroll Registry, Exhibit A of Donna Morahan's Affidavit* [Doc. #27]. "An employee will be considered to be paid "on a salary basis" within the meaning of the [federal] regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." *Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1340 (11th Cir. 1994) (quoting 29 C.F.R. §541.602). "An exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. §541.602 (2019). Here, the Plaintiff took an abundance of leave (vacation, sick time, personal days, and floating holidays) as evidenced in *Exhibit E* to Kimberly Crum's Affidavit [Doc. #26]. As juxtaposed to the payroll registry for the Plaintiff found in *Exhibit A* to Donna Morahan's Affidavit [Doc. #27] it is clear that Plaintiff was paid on a salary basis with no deductions or changes in his pay, regardless of hours worked per week or leave utilized in a given

pay period. Accordingly, Plaintiff's basis of pay satisfies the salary-based compensation prong of the executive exemption test.

The totality of Plaintiff's duties as Park Supervisor will satisfy both the second prong and third prong of the executive exemption test. The second prong, which requires the Plaintiff's primary duty to be the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, necessarily incorporates the third prong which requires the Plaintiff to customarily and regularly direct the work of two or more other employees. The Code of Federal Regulations defines "primary duty" as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. §541.700(a). As Park Supervisor, Plaintiff was responsible for all day-to-day activities of Fort DeSoto Park, the largest park in the Pinellas County park system. Plaintiff was the highest-ranking employee at the park and was the supervisor to all other employees, of which the Plaintiff testified there were twenty at a minimum, when the staff was "stretched thin." *Plaintiff's Deposition at p. 22:11 – 14; p. 26:21 – 23* [Doc. #25]. Plaintiff testified at his deposition that he was responsible for the day-to-day operations (*Id. at p. 21:18 – 21* [Doc. #25]), supervision of all the park staff and rangers (*Id. at p. 22:5 – 7, p. 22:11 – 17*), overseeing the entry booth to the park and the collection of funds (*Id. at p. 23:4 – 6*), training of new hires (*Id. at* p. *24:23 – 25:4*), administering progressive discipline under the UPS Rules (*Id. at p. 25:5 – 20*); approving time

cards and vacation requests of his subordinates (*Id. at p. 73:20 – 25*); reviewing his employees on a quarterly basis (*Id. at p. 74:1 – 6*); and creating his own schedule to meet the needs of the park "day by day" (*Id. at p. 27:20 – 25*). Plaintiff also testified that he often worked alongside his staff to clear out shelters and prepare for new campers and would "fill in the gap" if a ranger had to leave unexpectedly, thus doing some of non-managerial work of his staff (*Id. at p. 26:19 – 27:1; p. 27:15 –19*).

An analogous case is found in *Diaz v. Team Oney, Inc.*, 291 Fed. Appx. 947 (11th Cir. 2008), where the plaintiff was an assistant manager at a pizza restaurant. In *Diaz*, the plaintiff argued he did not meet the executive exemption from the FLSA because his prime responsibilities were servicing customers by making and cutting pizzas, routing deliveries of pizzas, greeting customers, and cleaning the store. *Id.* at 949. The 11th Circuit disagreed, holding that the plaintiff's "managerial duties – as the highest ranking employee on duty during the majority of his shifts, in which he supervised [all staff], apportioned work, made deposits, filled out required forms… -- were significantly more important to the operation of the restaurant than his non-managerial tasks." *Id.* Similarly, in the instant case, while Plaintiff was willing to undertake the non-managerial tasks of his staff when required, his primary role was the manager of Fort DeSoto. At deposition, Plaintiff was asked:

> Q:    You know, I had the opportunity to speak with some of the individuals you had provided as individuals who have information about your case, and the overwhelming sentiment was that 'Jim Wilson ran the show at Fort DeSoto.' Do you agree with that?

A:     I was the manager at Fort DeSoto, the supervisor. There was no "show". It was a workplace, and my job was to do over the day-to-day management of Fort DeSoto Park. So if that's what you discern or they discern as "running the show", I would say yes.

*Plaintiff's Deposition at p. 33:9-18* [Doc. #25]

Just as in the *Diaz* case, the Plaintiff's primary duty was being responsible for the operations of Fort DeSoto Park, even if the Plaintiff often performed the tasks of his subordinates. One factor the *Diaz* court considered in whether the *Diaz* plaintiff's managerial tasks were his primary duties was his relative freedom from direct supervision. *Diaz*, 291 Fed. Appx. at 949.  In the instant case, in addition to the myriad of managerial duties performed by the Plaintiff, he also testified that he was not closely supervised. He testified that he did not see his immediate supervisor or the Parks and Conservation Resources Director very often (*Plaintiff's Deposition at p. 32:7 – 24*) and, in his words, described Fort DeSoto as an "island" where he was "abandoned" (*Id. at p. 82:23 – 25*). From Plaintiff's own testimony, it is clear that the work he performed was primarily managerial as he was in charge of the park's day to day operations and also was charged with the supervision of the entire park's staff in his role, thus satisfying both prongs two and three of the executive exemption test.

The final prong of the executive exemption test is whether the Plaintiff had the authority to hire or fire other employees or if the Plaintiff's suggestions and recommendations as to the hiring, firing, advancement, promotion or any other

change of status of other employees were given particular weight. The Department of Labor's regulations have provided additional guidance as to "particular weight": "An employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have the authority to make the ultimate decision as to the employee's change in status." 29 C.F.R. §541.105 (2019). Plaintiff testified that he did not have the authority to hire or fire anyone, which is consistent with Pinellas County's Unified Personnel System and its progressive discipline policy. However, Plaintiff did testify to administering progressive discipline and recommending discipline, including terminations, in his role. *Plaintiff's Deposition at p. 25:5 – 13; p. 32:25 – 33:6* [Doc. #25]. As the senior employee of Fort DeSoto, the information regarding any discipline of any member of the Fort DeSoto staff would necessarily have to come from the Plaintiff as there would be no more senior employee of Pinellas County who would be in the position to know about the purported misconduct of the staff member.  Plaintiff also testified that he was in charge of training the new hires at Fort DeSoto. *Id. at 24:23 – 25:4.* The record is evident that Plaintiff's recommendations were given particular weight in the counseling and discipline of employees, which could include termination under the UPS Rules.

Having met all four requirements of the executive exemption test pursuant to 29 C.F.R. §541.100(a) (2019), Pinellas County has met its burden in showing that Plaintiff's work qualified for the executive exemption from the FLSA pursuant to 29 U.S.C. §213(a)(1) (2019). Accordingly, Plaintiff's claim fails as he is not entitled to overtime pay under the FLSA.

### b.  Plaintiff's Purported On-Call Time is Not Compensable

As a part of his overtime claim, Plaintiff seeks compensation for "stand by time" or on-call time.  First, the Plaintiff is not entitled to any of these hours because Plaintiff's work performed as Park Supervisor qualified for the executive exemption. Moreover, Plaintiff's claim for his purported on-call time also fails because Plaintiff was free to engage in personal activities when not scheduled to work, despite the fact that Plaintiff lived on-site at Fort DeSoto park as a condition of his position as Park Supervisor. However, by Plaintiff's own testimony, he was not restricted in activity or location when not working his scheduled hours. Pursuant to the lease agreement with Pinellas County, Plaintiff lived on-site in the event of emergencies and in exchange was provided his residence free of charge. Plaintiff's argument that he was "on-call duty 24 hours a day, 7 days a week" (*see Plaintiff's Complaint at ¶ 2* [Doc. #1]) is not supported by his own testimony nor by applicable case law.

The determination as to whether time spent on-call but not working is compensable is determined by two factors: (1) the degree to which the employee is

free to engage in personal activities, and (2) the agreements between the parties. *Lurvey v. Metropolitan Dade County*, 870 F. Supp. 1570, 1576 (S. D. Fla. 1994). Under long-standing FLSA precedent, time in which an employee is "engaged to wait", which is "time spent primarily for the benefit of the employer and his business," is compensable. *Gregory v. Quality Removal, Inc.*, 2014 U.S. Dist. LEXIS 154293, *7 (S.D. Fla. 2014). Time in which an employee is "waiting to be engaged," i.e., time that the employee can use "effectively for his or her own purposes," is not. *Id.*, citing *Lurvey*, 870 F. Supp. at 1578. "The question of whether the employees are working during this time for purposes of the FLSA depends on the degree to which the employee may use the time for personal activities." *Birdwell v. City of Gadsden*, 970 F.2d 802, 807 (11th Cir. 1992). "In light of the difficulty in separating "work" time from personal time for employees living on site, section 785.23 [29 C.F.R. §785.23, governing Employees residing on employer's premises or working at home] establishes a presumption that such employees are not working the entire time they are on premises." *Barraza v. Pardo*, 2015 U.S. Dist. LEXIS 94006, *18 (S.D. Fla. 2015). "It is clear that an employee's free time must be severely restricted for off-time to be construed as work time for the purpose of the FLSA." *Birdwell*, 970 F.2d at 810.

Plaintiff defined his "stand by time" as "days I was scheduled to work that anyone could call from that that five o'clock hour on when the chief's leave, as my

job entailed monitoring the park radio, scanning the sheriff's department, carrying a 911 pager and also a county cell phone." *Plaintiff's Deposition at p. 50:18 – 24* [Doc. #25]. Plaintiff testified that he would visit his daughter and took vacations regularly during the relevant time frame of this case. *Id. at p. 51:5 – 14*. Though Plaintiff testified that when he was interviewed for the position of Park Supervisor in 1999 he was advised he must always be able to be contacted in case of an emergency, Plaintiff admitted that his immediate supervisors for the relevant time frame of this case never once placed any restrictions on him regarding his emergency availability when he was not working his scheduled hours. *Id. at p. 52:12 – 17; 52:25 – 53:4*. Plaintiff also admitted that he was never given any restrictions regarding being within a certain distance of Fort DeSoto when he was not working his regular schedule hours. *Id. at p. 52:18 – 21*. Despite Plaintiff's claim that he was "on-call duty 24 hours a day" it is clear from his own testimony that he was free to engage in his own personal activities with no restrictions. In *Birdwell*, the 11th Circuit held that detectives who were forced to remain at home unless they had means to be contacted  and could not leave town, go on vacation, take compensatory time, drink alcohol, or go on outings with their families unless they took two cars, were nonetheless not so restricted in their activities that this time could be considered predominantly for the employer's benefit, and found for the employer in regard to the detectives' on-call time claims. *Birdwell,* 970 F.2d at 808 (11th Cir. 1992). As

20

Plaintiff was on virtually no restrictions in his personal time, except that he kept a beeper on his person, his claim for on-call compensation falls far below the 11th Circuit's standard for compensable on-call time.

The second consideration as to whether Plaintiff's purported on-call time is compensable is whether a reasonable agreement existed between the parties. Pursuant to the lease that was entered into by both Plaintiff and the County in 2005, Plaintiff  was provided the County-owned residence in Fort DeSoto and would not be required to pay rent, valued at $750 a month per the lease, and in exchange the Plaintiff would be available in the event of an emergency at the park. (*See Exhibit 1 to Plaintiff's Deposition* [Doc. #25]).  Plaintiff lived in the residence from 1999 until his retirement in 2019 and never paid rent for the duration of his tenancy. *Plaintiff's Deposition at p. 19:8 – 10, p. 20:21 – 21:2* [Doc. #25]. According to the Plaintiff, there were two significant emergencies that occurred during the relevant time frame to this action: securing Fort DeSoto in preparation of Hurricane Irma and the subsequent clean-up, work for which Plaintiff admits he was compensated; and a water stoppage incident in 2019 where Plaintiff testified he worked through one night, from approximately five o'clock p.m. until six-thirty a.m. the following morning, to address the resulting fallout from no running water in the bathrooms at the campgrounds. *Id. at p. 65:1 – 24.* Plaintiff testified that there were no other emergencies that came to his mind that were "even close" in similarity to the work

21

he performed during the hurricane in 2017 or the water stoppage incident, and testified to examples of other incidents he would got called out for during his off time, such as medical emergencies or covering for one of his employees who had an ill spouse. *Id. at 67:15 – 68:4.* The lease agreement is devoid of clear terms regarding what constituted an emergency, but because Plaintiff was not entitled to overtime, it is clear that the on-site residence being provided for free of charge was considered an additional employment benefit in exchange for the Plaintiff being available for emergency call outs as necessary.

Plaintiff's claim for overtime wages for his on-call hours fails because, first, Plaintiff was not entitled to overtime because he worked in a bona fide executive capacity. Moreover, Plaintiff's activities were not restricted in any material way when he was not working his scheduled hours. As a salaried employee, the County-owned residence Plaintiff was provided rent-free at Fort DeSoto was a perk of his position that was provided in exchange for the Plaintiff being available for unexpected emergencies.

## V.    CONCLUSION

The record in this case provides many facts about Pinellas County's designations of its employees and the lease agreement with the Plaintiff, however the crux of this case comes down to whether the Plaintiff was a bona fide executive employee who was exempt from the FLSA. By Plaintiff's own testimony, he met

22

every prong of the executive exemption test and was not entitled to overtime, whether it was for what he characterized as regular overtime or the hours he claims he was on-call while he was at his home. Accordingly, County respectfully requests the Court GRANT Defendant's Motion for Summary Judgment and grant judgment for the Defendant.

Respectfully submitted this 7th day of July, 2021.

/s/  Ashley N. Donnell
ASHLEY N. DONNELL, ESQ.
FBN 100535
Assistant County Attorney
Trial Counsel for Defendant Pinellas County

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been

furnished by E-Mail to: **Robert R. Warchola, Esq.**, Shumaker Loop & Kendrick,

Attorney for Plaintiff, at rwarchola@shumaker.com and tmartinez@shumaker.com,

this 7th day of July, 2021.

> /s/  Ashley N. Donnell
> ASHLEY N. DONNELL, ESQ.
> FBN 100535
> Assistant County Attorney
> Pinellas County Attorney's Office
> 315 Court Street, Sixth Floor
> Clearwater, Florida  33756
> Phone:  (727) 464-3354
> Fax:  (727) 464-4147
> Primary Email: adonnell@pinellascounty.org
> Secondary Email: eservice@pinellascounty.org
> Trial Counsel for Defendant Pinellas County

PCAO Doc No. 333723